AUSA: Mark Chasteen      Telephone: (313) 226-9555
AO 91 (Rev. 11/11) Criminal Complaint     Special Agent:    David Jacobs      Telephone: (248) 879-6090

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br><br>Thomas Lee McKinney | Case No.    Case: 2:22-mj-30020<br>Judge: Unassigned,<br>Filed: 01-13-2022 At 11:50 AM<br>USA v. SEALED MATTER (CMP)(MLW) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____12/12/18 to 1/10/19_____ in the county of _____Oakland_____ in the _____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1028(A) | Aggravated Identity Theft |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

David S. Jacobs - Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __January 13, 2022__

_____
*Judge's signature*

City and state: __Detroit, MI__

Anthony P. Patti - U.S Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT

I, David S. Jacobs, being first duly sworn, hereby depose and say:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the FBI Detroit-Oakland County Resident Agency. I have been employed as an FBI Special Agent since July 2017. As such, I primarily investigate white collar crimes, and am a member of the Detroit Metro Identity Theft and Financial Crimes Task Force. The task force consists of FBI Special Agents and federally deputized law enforcement officers from state and local law enforcement agencies in Metro Detroit. The task force is responsible for investigating complex financial crimes including but not limited to bank fraud, wire fraud, money laundering and large scale identity theft and access device fraud. I have conducted and been trained in the investigation of violations of federal law including, but not limited to, bank fraud, wire fraud, money laundering, identity theft and access device fraud.

2. This affidavit is based upon information I have gained from information provided by other FBI Special Agents, other law enforcement officers, and others who have personal knowledge or the events and circumstances described herein.

3. The information set forth in this affidavit is meant to establish probable cause to show that Thomas Lee McKinney (MCKINNEY) has committed acts in violation of 18 U.S.C. § 1344 (Bank Fraud) and 18 U.S.C. § 1028(A) (Aggravated Identity Theft); and the information set forth is for the limited purpose of establishing probable cause; this affidavit, therefore, may not include all the information collected during this investigation.

**PROBABLE CAUSE**

4. On approximately 02/17/2019, DK who is a contract security employee for United Parcel Service (UPS), reported to the FBI Detroit-Oakland County Resident Agency that a UPS check in the amount of $608,100.00 was fraudulently deposited into a JPMorgan Chase Bank (JPMC) account in Huntington Woods, Michigan. DK indicated that on about 01/10/2019, UPS was contacted by LZ, who is a JPMC employee, regarding suspicious activity involving a UPS issued check that was deposited on 01/07/2019 at a JPMC to an account in the name of Bluestem Brands Inc.

5. DK explained that on 12/12/2018, UPS issued a check numbered 15049024 in the amount of $608,100.00, from a facility in Roswell, Georgia. Approximately 12 employees worked at the facility, and were solely responsible for printing and processing checks. Approximately 20 to 80 checks were processed at the facility daily, and prior to this incident, no similar incidents were known. Further, UPS verified the amount and approval process for the issuance of the fraudulently deposited check was correct, and a shipping label for the check was created. However, the shipping label was never used, as no data related to the transit of the check could be found. No duplicate shipping labels were created and no matching shipments to the Minneapolis, Minnesota area, which was the intended destination of the check, in December of 2019 were found.

6. The check was issued and intended to be sent via UPS to Bluestem Brands Inc. as a legitimate annual incentive due to the company. A UPS employee in Minnesota was to then hand over the check to Bluestem Brands Inc., which was standard procedure.

7. Bluestem Brands Inc. is headquartered in Eden Prairie, Minnesota and is the parent company to six eCommerce retail brands.

8. DK first determined, and I later verified on the Michigan Licensing and Regulatory Affairs (LARA) website, that Bluestem Brands Inc. was incorporated in Michigan on 12/20/2018 by Jeremy Dale Mathis (MATHIS), who is listed as the resident agent. 157** Monte Vista St. Detroit, Michigan 48238 was listed as the address and registered office mailing address. Abraham Davis of 84** Vaughan St. Detroit, Michigan 48228 signed the document as the incorporator as reported by the LARA website, but an actual signature of Abraham Davis was not available on the website.

9. I conducted an internet search for a Michigan-based Bluestem Brands Inc. and did not locate any indication the Michigan based Bluestem Brands Inc. actually conducted business or provided goods or services.

10. JPMC provided records that confirmed Chase Total Business Checking account number 367678320, herein known as **8320, was opened on 01/04/2019 at the Chase Bank located at 25800 Coolidge Highway, Huntington Woods, Michigan 48070. The account was titled to "Bluestem Brands Inc." and the business address was listed as 157** Monte Vista St. Detroit, Michigan 48238. "Jeremy B. Mathis" was listed as the account

signatory dated 01/07/2019 with the title of "President." "Website

documentation" was listed as the "Primary ID Type" with regards to

documents needed to open the business checking account.


11. Included records from JPMC was a copy of UPS check No. 15049024 in the

amount of $608,100.00 that was deposited into **8320. The check appeared

to bear the UPS logo and indicated it was issued from 1335 Northmeadow

Parkway, Suite 119, Roswell, Georgia 30076 on 12/12/2018. The check was

made out to Bluestem Brands Inc. and was endorsed on the back by a

signature that read Jeremy Mathis.


12. A document titled "Business Account Add Signers Form" was included

with the JPMC records. Thomas L. McKinney was added to the account on

01/07/2019. MCKINNEY's title was "signer." A signature that read

"Thomas McKinney" was written on the same line as MCKINNEY's printed

name, the title of "signer" and date of 01/07/2019. A signature that I believe

to read "Jeremy Mathis" was signed under the "certification" banner on the

document.

13. JPMC also provided records for another account previously opened by MATHIS. MATHIS opened a Chase Personal Access Checking account ending **8838 on 06/23/2008. A personal address at 13** Tick Ridge Rd. Vinton, Ohio was listed on the signature card. MATHIS' date of birth was listed as 03/**/1978 and a Florida driver's license M320****1010 was provided as "Type of Ownership" information. The account was issued by a JPMC Branch called "Huntington Main" that included a phone number with a (304) area code. Area code 304 is used in the State of West Virginia and I know the city of Huntington is located in western West Virginia.

14. Using a law enforcement accessible database, I determined MATHIS had ties to addresses in Florida, Ohio and West Virginia. A query of Florida driver's license records returned a photo of MATHIS and an expired class E operator license that was issued to Jeremy D. Mathis, DOB: 03/**/1978, listed address 6** Amaryllis Drive, Barefoot Bay, Florida 32976 on 03/19/2006. A query of Ohio driver's license records did not return a photo but confirmed Jeremy D. Mathis, DOB: 03/**/1978, listed address 13** Tick Ridge Rd. Vinton, Ohio 45686 had an expired operator's license. A query of West Virginia driver's license records returned a photo of MATHIS and a license type listed a "non-driver." Jeremy Billy Mathis, DOB:

03/**/1978 of 4** Crescent St. Huntington (Wayne Co.) West Virginia,

25704 was associated with the returned photo.

15. JPMC also provided for another account previously opened by

MCKINNEY. MCKINNEY opened a Chase Personal Total Checking

account ending **0190 on 10/24/2012. A personal address of 30XX

Montgomery St. Detroit, Michigan 48206 was listed on the signature card.

MCKINNEY's date of birth was listed as 08/**/1975 and a Michigan

driver's license M2507****7646 was provided as one "Type of Ownership"

for the account.

16. A query of Michigan Secretary of State (MI SOS) records returned a

snapshot of a driver's license with a photo of Thomas Lee McKinney Jr., ID

#M2507****7646, date of birth; 08/**/1975 and a listed address of 27**

Columbus Detroit, Michigan 48206. I also queried the Michigan Department

of Corrections (MDOC) offender database and located MCKINNEY.

MCKINNEY was listed on active supervision related to possession of a

controlled substance narcotic/cocaine <25 grams. On approximately

05/10/2019, I spoke with MCKINNEY's Probation/Parole Agent, who

confirmed MCKINNEY was on active supervision but had absconded. On

09/07/2021, MCKINNEY's Probation/Parole Agent confirmed MCKINNEY had been discharged from MDOC supervision on 08/09/2021, after appearing virtually for a hearing on 08/06/2021.

17. JPMC provided several still photos of a white male subject inside the branch location at 25800 Coolidge Highway, Huntington Woods, Michigan on 01/04/2019 (the date account **8320 was opened) and 01/05/2019. JPMC also provided photos of the same white male subject and a black male subject together inside the same branch location on 01/07/2019. Based on account opening documents provided, results of Michigan SOS and MDOC queries, results of driver's license queries from Florida, Ohio and West Virginia, along with the aforementioned photos, I positively identified MATHIS and MCKINNEY together, inside the JPMC branch at 25800 Coolidge Highway, Huntington Woods, Michigan, on 01/07/2019, which is in the Eastern District of Michigan.

18. I reviewed the January 2019 checking statement summary for account **8320 and found the following. $80.00 was deposited into the account on 01/04/2019, which was the date the account was opened. The deposit slip bore Jeremy Mathis's name. On 01/08/2019, a deposit in the amount of

$608,100.00 was made to **8320. On 01/09/2019 withdrawals in the amounts of $115,423.03 and $3,000.00 were made. On 01/10/2019, withdrawals in the amounts of $8,621.00 and $46,266.17 were made. As of 01/10/2019, $434,869.80 remained in the account until it was frozen by JPMC due to suspected fraud.

19. JPMC provided a withdrawal slip dated 01/09/2019 in the name of Bluestem Brand Inc/Thomas McKinney, with a notation indicating cashier's checks were withdrawn in the amount of $115,423.03 from account **8320. MCKINNEY's signature on the withdrawal slip appears similar to the signature on his Michigan Driver's License snapshot. A second withdrawal slip dated 01/09/2019 was provided in the name of Bluestem Brand Inc/Thomas McKinney indicating a withdrawal in the amount of $3000.00 was made from account **8320. Signatures on both withdrawal slips appear similar and both read "Thomas McKinney."

20. JPMC provided a withdrawal slip dated 01/10/2019 in the name of Thomas McKinney indicating a withdrawal in the amount of $8621.00 was made from account **8320. A second withdrawal slip dated 01/10/2019 was

provided in the name of Bluestem Brands Inc. indicating $46,266.17 was withdrawn from account **8320.

21. An offsets to withdrawals document provided by JPMC confirms the withdrawal on 01/09/2019 in the amount of $115,423.03 and the withdrawal on 01/10/2019 in the amount of $46,266.17 were withdrawn as cashier's checks. The withdrawal made on 01/09/2019 in the amount of $3,000.00, and the withdrawal made on 01/10/2019 in the amount of $8,621.00 were both cash-out withdrawals. All withdrawal slips indicated Bluestem Brands and/or Thomas McKinney was the customer, and all withdrawal slips bore a signature that appeared similar and read "Thomas McKinney."

22. The $115,423.03 withdrawn on 01/09/2019 was taken out in 15 cashier's checks made out to the following persons in the following amounts. The last four digits of the check number is also notated

- $7,646.67 made out to ET; **1889
- $7,745.44 made out to ET; **1890
- $7,835.61 made out to ET; **1891
- $7,556.32 made out to WF; **1892

- $7,846.23 made out to WF; **1893

- $7,535.90 made out to WF; **1894

- $7,353.77 made out to RO; **1895

- $7,953.67 made out to RO; **1896

- $7,846.30 made out to RO; **1897

- $7,656.43 made out to KW; **1898

- $7,635.89 made out to KW; **1899

- $7,352.87 made out to KW; **1900

- $7,655.54 made out to MB; **1901

- $7,756.67 made out to MB; **1902

- $7,945.66 made out to MB; **1903

23. The $46,266.17 withdrawn on 01/10/2019 was taken out in six cashier's checks made out to the following persons in the following amounts. The last four digits of the check number is also notated. A copy of check number ending **0328 was not included in the subpoena return, but was included in the offsets to withdrawals document and written in the amount of $7,935.61.

- $7,646.67 made out to ET; **0326

- $7,745.44 made out to ET; **0327

- $7,556.32 made out to LT; **0329

- $7,846.23 made out to LT; **0330

- $7,535.90 made out to LT; **0331

24. JPMC confirmed the withdrawals made by MCKINNEY on 01/09/2019
    were made at the JPMC branch located at 15633 W. Seven Mile Rd.,
    Detroit, Michigan, and the withdrawals made by MCKINNEY on
    01/10/2019 were made at the JPMC branch located at 18100 W. Eleven Mile
    Rd., Lathrup Village, Michigan.

25. JPMC provided CCTV video dated 01/09/19 that began at approximately
    09:31 AM (EST). The footage showed MCKINNEY seemingly conduct a
    transaction at a teller window. MCKINNEY appeared in the footage at
    approximately 09:32 AM (EST) with at least one sheet of yellow paper and
    seemingly talked on a cellular phone using an earpiece with a wire.
    MCKINNEY exited the frame briefly, but soon re-entered and appeared to
    speak with the teller with a blue pen in his hand. MCKINNEY entered and
    exited the frame several times, but at about 09:42 AM (EST) he appeared to
    sign a piece of paper and hand it back to the teller. The video clip ended at
    approximately 09:45 AM (EST). As noted in the preceding paragraphs,

MCKINNEY withdrew $115,423.03 on 01/09/2019 and had the funds issued in 15 cashier's checks.

26. In January of 2020, I interviewed ET. ET claimed to have worked for a company ET referred to as "Build Stream" from approximately November 2018 until January 2019. ET was a salaried employee but earned $22.50 per hour. ET worked 40 hours per week plus overtime. ET indicated Build Stream laundered scrubs, mops, and other materials for hospitals. The first check ET received was about $1,200 and was issued using a personal check. ET believed every employee received a personal check. ET was never given a 1099, W2, or ever completed any sort of tax related paperwork relevant to ET's work at Build Stream. ET acknowledged that while employed with Build Stream, ET cashed checks that were about $7,000. ET was shown copies of the cashier's checks that were written to ET, and ET confirmed the signatures on the checks were ET's. ET received about $38,000 for about 10 weeks of work. ET was given the checks, told to cash them, keep some of the money, then give the money back to RB, who ET claimed was ET's supervisor. ET kept about $6,300 after cashing the checks. Near the end of the interview I pointed out to ET the name of the company listed on the checks was Blue Stem Brands, not Build Stream. ET acknowledged Blue

Stem Brands was probably the name of the company ET had worked for. ET
had never heard of Build Stream or Blue Stem Brands prior to working for
the company.

27. In March of 2021, I spoke with LT by phone after a business card was left
at an address LT was believed to frequent. LT was asked about cashing
approximately $22,000 worth of checks in January of 2020. LT claimed to
not recall ever receiving or cashing the checks that were made out to LT. LT
claimed to have worked for a variety of different companies, but had never
heard of Blue Stem Brands. LT further stated January 2020 was a long time
ago, and referenced the COVID-19 pandemic. Since initially speaking with
LT by phone, LT has not returned phone calls, provided a current/true
address or been available to meet to view the checks that were issued to ET.

28. In June of 2021, I interviewed MATHIS by phone. MATHIS confirmed he
was in the Detroit area from late 2018 to early 2019, and while in metro
Detroit participated in fraud. MATHIS recalled being given fraudulently
produced identification cards, memorizing social security numbers that were
not his, and even wearing an earpiece where he was provided the personal
identifying information (PII) of other persons while he (MATHIS) was at

financial institutions. MATHIS confirmed he deposited checks, then

withdrew cashier's checks as part of fraud schemes. MATHIS recalled

depositing an approximately $600,000 UPS check into a JPMC business

account in the name of Bluestem Brands. MATHIS alleged he never opened

the account **8320, but was instructed by co-conspirators to sign the

account over to a person he (MATHIS) went to the bank with. MATHIS did

not know MCKINNEY by name, but believe MCKINNEY was a singer or

did something with clubs.

29. During this investigation, I determined MCKINNEY is associated with an

entity referred to as "Tru 2 Life Entertainment" or "Tru2life.ent" as

advertised on a Facebook page that features MCKINNEY. I believe

MCKINNEY may be a club and/or entertainment promoter. Below is a

screenshot of the "Tru2life.ent" Facebook page with a description of the

entity and a screenshot of a video made by MCKINNEY on the Facebook

page that was captured on 07/16/2021, but was posted on 07/14/2021.



30. During this investigation, I located two other Facebook pages used by

MCKINNEY. On approximately January 7, 2020, MCKINNEY posted the

below message, which I captured, to his "Linwood Tru" Facebook account,

but also linked the message to his "Thomas Tru McKinney" account.



31. On approximately January 8, 2019, MCKINNEY made the post below, which I captured, to his Linwood Tru Facebook account.



32. On approximately January 9, 2019, MCKINNEY made a video post, which is captured below in a screenshot, to his Linwood Tru account, but also tagged his Thomas Tru McKinney account.



33. The preceding paragraphs indicate MCKINNEY was knowingly involved

with UPS, conducted a transaction at a financial institution, and possessed

banded US currency, which can be obtained from a financial institution,

during the time period of approximately January 7, 2019 through January 9,

2019. As previously written in this affidavit, the investigation determined

MCKINNEY was added to account **8320 on January 7, 2019 as a "signer" and made a $3,000 withdrawal from ***8320 on January 9th, 2019.

34. At no point has UPS ever done legitimate business with MCKINNEY nor would he have any legal reason to possess US currency obtained from withdrawals made on account **8320 that was funded with a check UPS had intended for Bluestem Brands Inc. of Eden Prairie, Minnesota.

35. During the course of this investigation, it was discovered that MCKINNEY traveled on Southwest Airlines (SWA). SWA returned records confirmed MCKINNEY traveled on SWA on 02/04/2019. MCKINNEY traveled from Detroit to Orlando and back on 02/04/2019. Records indicated MCKINNEY and KS, who is a resident of the Eastern District of Michigan, were listed as passengers for flights on 02/04/2019. However, returned records also showed KS never boarded or traveled on 02/04/2019 despite having purchased a ticket.

36. Citibank provided records that confirmed fraud on a credit card account ending **1557 that belonged to MC, who resides in the Eastern District of Michigan. Citibank records showed **1557 was closed on 02/26/2019 for

fraud related disputes to SWA. A transaction in the amount of $967.98 was made to **1557 on 02/02/2019 and a transaction in the amount of $159.99 was made on 02/04/2019. Both fraudulent transactions listed "card absent environment." Provided records also included a certification that the cardholder denied authorizing or participating in the disputed transactions. A corresponding Citibank statement for **1557 for the time period 01/17/2019 to 02/18/2019, showed the $967.98 charge made on 02/02/2019 and the $159.99 charge made on 02/04/2019. "MCKINNEY/THOMAS" was listed as the "Name" on the statement for **1557 related to the two charges to SWA for flights from Detroit to Orlando and back. Total fraud related to these two transactions was $1,127.97.

37. In March of 2020, I interviewed MC regarding fraud that occurred on account **1557. MC viewed several documents provided by Citibank, and confirmed the information on the documents was related to MC and the account ending **1557. MC also confirmed MC did not charge $967.98 or $159.99 to **1557, on 02/02/2019 or 02/05/2019, respectively. MC was aware of the fraud and did not know how it occurred. MC did not give anyone permission to use **1557 and MC had not purchased SWA tickets.

MC did not know MCKINNEY and had not given MCKINNEY permission to use **1557 at any point in time.

## CONCLUSION

38. Based on the aforementioned information, there is probable cause to believe Thomas Lee McKinney, has committed acts in violation of 18 U.S.C. § 1344 (Bank Fraud) and 18 U.S.C. § 1028(A) (Aggravated Identity Theft)

DAVID S. JACOBS
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable Anthony P. Patti     January 13, 2022
United States Magistrate Judge